UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CR-20151-ALTMAN

UNITED STATES OF AMERICA

vs.

DANNY NUNEZ MARMOL,

    **Defendant.**
_____/

## DETENTION ORDER

On June 4, 2021, a hearing was held pursuant to 18 U.S.C. § 3142(f) in the above-entitled case to determine whether Defendant Danny Nunez Marmol ("Defendant") should be detained prior to trial.

Having considered the evidence presented at the pre-trial detention hearing, the pretrial services report, and the factors enumerated in 18 U.S.C. § 3142(g), the Court finds that there are no conditions or combination of conditions of release that will reasonably assure the safety of the community.

Therefore, it is ordered that Defendant be detained prior to trial and until the conclusion thereof. In accordance with the provisions of 18 U.S.C. § 3142(i)(1), the Court makes the following findings of fact and statement of reasons for the detention:

    1.    Defendant is charged by Indictment with conspiracy to distribute 5 kilograms or more of cocaine, intending, knowing and having reasonable cause to believe it would be imported into the United States, in violation of Title 21, United States Code, Section 963; conspiracy to import 5 kilograms or more of cocaine into the United States, in violation of Title 21, United States Code, Section 963; and, conspiracy to possess with intent to distribute 5 kilograms or more of

cocaine, in violation of Title 21, United States Code, Section 846.  The maximum penalty for each of the charged offenses is life imprisonment.  Accordingly, there is a rebuttable presumption under the provisions of Title 18, United States Code, Section 3142(e)(3)(A) that no condition or combinations of conditions will reasonably assure the safety of the community.

2. The Court finds that Defendant has not overcome the presumption that no condition or combination of conditions of release will reasonably assure the safety of the community.

3. The United States proffered evidence that beginning in approximately 2013-2014, Defendant and his brother, Co-Defendant Endy De Jesus Nunez Marmol ("E. Nunez") (together, the "Nunez Brothers") were involved in a criminal organization which was importing cocaine into the United States from the Dominican Republic and distributing the cocaine in Florida, New York and Pennsylvania.  The cocaine was shipped, hundreds of kilograms at a time, hidden in cardboard boxes containing legitimate containerized cargo.  The cocaine packed in the cardboard boxes was flattened and concealed between the panels of the box flaps, a method devised by Co-Defendants Miguel Andres Gutierrez Diaz ("M.A. Gutierrez") and Miguel Emilio Gutierrez Diaz ("M.E. Gutierrez") (together, "Gutierrez Brothers").  The boxes were used to pack shipments of fruit, including shipments owned by a company in Doral, Florida acquired by M.A. Gutierrez for the purpose of importing cocaine using cover shipments of fruit.  Each box contained approximately one kilogram of cocaine.  Seven or eight 250-kilogram cocaine shipments were imported using this method of concealment.  The Defendants also imported into South Florida several shipments of cocaine concealed in private yachts.

4. Upon arrival in the U.S., the cocaine was delivered to the Nunez Brothers, who received and distributed cocaine in the United States.  The cocaine was then transported to New York by the Nunez Brothers' cousin, who was in law enforcement.

5. In 2016, E. Nunez began working directly with M.A. Gutierrez. In 2017, the two of them imported a load of 200 kilograms of cocaine. The cocaine was packed into boxes in the Dominican Republic and delivered to the Nunez Brothers. The cocaine was imported into the United States inside a containerized shipment of fruit and sold in New York. The proceeds were collected and sent to the Dominican Republic. M.A. Gutierrez and the Nunez Brothers successfully imported at least four more loads of cocaine between 2017 and 2019. Each load consisted of approximately 250 kilograms of cocaine, with the Nunez Brothers and M.A. Gutierrez each investing in 125 kilograms per load. The last shipment occurred in late 2019 or early 2020. Fruit was the cover load for these shipments, which were shipped to New York via containers.

6. Two of the shipments of cocaine involving the Nunez Brothers and the Gutierrez Brothers were seized by law enforcement. The first seizure, which occurred on March 26, 2015, was from a hidden compartment in a van and a stash house in Kendall, Florida. The second seizure, which occurred at Port Everglades in Ft. Lauderdale, Florida on September 22, 2017, consisted of approximately 167 kilograms of cocaine flattened and hidden in the flaps of cardboard boxes containing a cover load of fruit owned by M.A. Gutierrez's Doral fruit company.

7. Beginning in 2014, the Nunez Brothers were also involved in several shipments of cocaine aboard private yachts, which transported the cocaine from the Dominican Republic to South Florida, where the cocaine was delivered to them. The cocaine was transported by the Nunez Brothers and their cousin employed in law enforcement to New York, where the cocaine was distributed and sold. The proceeds were collected and returned to the Nunez Brothers in South Florida, then transferred to the Dominican Republic. With regard to the private yacht shipments, the government proffered the following details:

    a. Approximately 229 kilograms of cocaine were imported aboard the Emma Grace in

      2014.

   b. Approximately 380 kilograms of cocaine were imported aboard the Happy Ending in May 2015.

   c. Approximately 430 kilograms of cocaine were imported aboard the Happy Ending in 2016, of which 120 kilograms were purchased in the Dominican Republic by M.A. Gutierrez for one million dollars.

   d. Approximately 410 kilograms of cocaine were imported at a marina in Ft. Lauderdale, Florida, in June or July 2016, of which approximately 150 kilograms were delivered to the Nunez Brothers.

   e. Approximately 410 kilograms of cocaine were imported in August 2016, of which approximately 150 kilograms were delivered to the Nunez Brothers.

8. These proffered facts, which were not rebutted by Defendant, support a finding by clear and convincing evidence that Defendant poses a danger to the community, given the large amount of drugs involved in the shipments, exceeding two thousand kilograms of cocaine, over an extended period of time, covering several years. The Court further finds that no condition or combination of conditions of release will reasonably assure the safety of the community.

9. Therefore, the Court hereby directs that:

   a. Defendant be detained without bond;

   b. Defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

   c. Defendant be afforded reasonable opportunity for private consultation with counsel; and,

    d.  On order of a Court of the United States or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined shall deliver him to a United States Marshal for the purpose of an appearance in connection with court proceedings.

  **DONE AND ORDERED** at Miami, Florida this 10th day of June 2021.

                  _____
                   ALICIA M. OTAZO-REYES
                   UNITED STATES MAGISTRATE JUDGE

cc: Counsel of Record
  Pretrial Services
  U.S. Marshals Service